## MILLER *v.* STRAHL.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 458. Argued November 29, 1915.—Decided December 20, 1915.

Whether a state statute contravenes the constitution of the State does not concern this court.

When a person engages in a business that is subject to regulation by the State, such as hotel keeping, he undertakes to fulfil the obligations imposed on such business.

A State may prescribe the duties of hotel-keepers in regard to taking precautions against fire and to giving notice to guests in case of fire.

Rules of conduct must necessarily be expressed in general terms and depend upon varying circumstances—and a police statute requiring keepers of hotels to give notice to guests in case of fire is not lacking in due process of law because it does not prescribe fixed rules of conduct. *Nash* v. *United States*, 229 U. S. 373, followed, and *International Harvester Co.* v. *Missouri*, 234 U. S. 199, distinguished.

A police statute otherwise valid is not unconstitutional as denying equal protection of the law because applicable only to hotels having more than fifty rooms. There is a reasonable basis for classification of hotels based on number of rooms.

The statute of Nebraska of 1913, requiring keepers of hotels having over fifty rooms to keep night watchmen to guard against fire and to awaken guests in case of fire is not unconstitutional as depriving the keepers of hotels having fifty rooms or more of their property without due process of law or as denying them equal protection of the law because the act does not apply to keepers of hotels having less than fifty rooms; nor for denying due process of law because it does not prescribe an exact rule of conduct in case of fire.

97 Nebraska, 820, affirmed.

THE facts, which involve the constitutionality under the Fourteenth Amendment of a statute of Nebraska relative to duties and liabilities of hotel keepers in case of fire, are stated in the opinion.

*Mr. Edgar M. Morsman, Jr.*, for plaintiff in error:

The trial court placed upon the statute an interpretation

which permitted the jury to hold plaintiff in error liable if they should find from the evidence that either he, as proprietor of the hotel, or any of his employés, had failed to do all in their power to save defendant in error unharmed from the fire.

The statute, or this interpretation thereof by the instructions of the court, is so indefinite that it fails to prescribe any fixed rule of conduct by which the inn-keeper can guide his actions and, therefore, the taking of life, liberty or property based upon an alleged violation of such a statute, to-wit: to do all in one's power, does not constitute due process of law.  *Collins* v. *Kentucky*, 234 U. S. 634; *International Harvester Co.* v. *Kentucky*, 234 U. S. 216; *State* v. *Mann*, 2 Oregon, 238; *Cook* v. *State*, 26 Ind. App. 278; *United States* v. *Capital Traction Co.*, 34 App. D. C. 592; *Brown* v. *State*, 137 Wisconsin, 543; *Tozer* v. *United States*, 52 Fed. Rep. 917; *R. R. Com.* v. *Grand Trunk*, 100 N. E. Rep. 852; *United States* v. *Reese*, 92 U. S. 214; *American School* v. *McAnnulty*, 187 U. S. 94; *Czana* v. *Board of Medical Sup.*, 25 App. D. C. 443.

The due process clause of the Federal Constitution prevents not only the taking of life and liberty, but also the taking of property without due process of law.  The statute cannot be held unconstitutional as to the criminal penalty and be held valid so far as the civil liability is concerned.  If the statute through its criminal liability deprives a person of life and liberty without due process of law, it must necessarily through the civil liability deprive a person of property without due process of law.  The statute, so far as the Federal question involved is concerned, cannot be constitutional for the purpose of taking one's property and unconstitutional for the purpose of depriving one of life and liberty.

Among other things, the statute provides that the watchman, in case of fire, shall instantly awaken each guest and inform him of the fire.  It further provides that

the proprietor, in case of fire, shall give notice thereof to all guests and inmates thereof at once. In order that the watchman could awaken defendant in error and notify him of the fire it was necessary for the watchman to place himself in a position of as great danger as was defendant in error. The statute thus interpreted required of the watchman, of the proprietor and of every other employé, that they must risk their life in order to awaken and notify a guest, and plaintiff in error contends that to deprive a man of his life and liberty (imprisonment), or of his property (fine or liability in damages), because he fails to risk his life to save the lives of others, does not constitute due process of law. *Jacobson v. Massachusetts*, 197 U. S. 11; *Gastineau* v. *Commonwealth of Kentucky*, 108 Kentucky, 473.

At common law the inn-keeper owed no duty to protect his guests from fire. *Hare* v. *Henderson*, 43 Upper Canada Queen's Bench, 571; *Clancey* v. *Barker*, 66 C. C. A. 469.

An inn-keeper has never been an insurer of the safety of his guest and such is the express statement made by the state court in this case.

*Mr. H. C. Brome*, with whom *Mr. Clinton Brome* and *Mr. H. S. Daniel* were on the brief, for defendant in error.

Mr. Justice McKenna delivered the opinion of the court.

Action for the recovery of $15,000 on account of injuries sustained by defendant in error while a guest at the hotel of plaintiff in error, caused by the negligence of the latter and in violation of a law of the State of Nebraska.

Plaintiff in the case, defendant in error here, alleges that the plaintiff in error was the proprietor and operator of what is known as the Millard Hotel, located in Omaha, Nebraska, and that, as such, he received and entertained

defendant in error as a guest for hire; that on the night of January 22, 1911, and during the morning of January 23, defendant in error occupied a room on the fourth floor of the hotel; that the hotel had more than fifty rooms and was four or more stories high; that between midnight and dawn, January 23, 1911, a "hostile fire" broke out in the hotel which, it is alleged, by reason of the negligence of plaintiff in error, was not properly discovered or controlled and a portion of the hotel was burned, the halls thereof filled with smoke and gases, endangering the lives of the guests and inmates; that plaintiff in error and his servants failed and neglected to awaken the guests or give them notice of the fire, and that by reason thereof defendant in error was injured by the smoke and gases in attempting to escape from the hotel.

The specifications of negligence are as follows:

(1) Failure to maintain a competent night watchman; that the hotel was not properly patrolled, examined or inspected, and that its employés negligently failed to be at their posts of duty to respond to the warnings given them.

(2) Plaintiff in error did not maintain an efficient or sufficient system of fire gongs for arousing guests, that he did not as soon as the fire was discovered ring or cause to be rung a fire gong on the fourth floor or ring or cause to be rung a telephone in the room of defendant in error, or in any other way awaken, arouse, or notify him of the existence of the fire.

(3) Plaintiff in error did not notify defendant in error of the location of the stairway leading from the fourth floor; that the hotel did not have a sufficient number of stairways; that plaintiff in error failed to operate the elevator, failed to respond to defendant in error's demand to be removed, and failed to have any light, sign or notice indicating the location of the elevator.

(4) Defendant in error's room was furnished with a

rope which plaintiff in error represented could be used for the purpose of a fire escape, but that it was too small and insufficient for such purpose, and that proper directions were not given for its use as a means of escape. Defendant in error attempted to escape by means of this rope and in doing so suffered bodily injuries.

There were general denials of these allegations and averments of negligence on the part of defendant in error which directly, it is averred, contributed to and caused his injuries and without which, it is further averred, he would not have received them. A knowledge of or means of knowledge of the plans of the hotel and means of ingress and egress were averred and also the equipment of the hotel with lights in its halls, notices and fire escapes.

The case was tried to a jury which returned a verdict for defendant in error in the sum of $6,500, upon which judgment was entered. It was affirmed by the Supreme Court of the State.

The Supreme Court in its opinion says, 97 Nebraska, p. 823: "It is undisputed that the smell of smoke was detected by one of the employés in the hotel about 1:30 A. M., and that later a guest called the attention of the night clerk to the smell of smoke; that the clerk did nothing further than to look into the cuspidor to see if paper, or some like combustible matter, might be burning there. And this was two hours before the appellee awoke to find the halls filled with smoke. These facts, together with the testimony relating to the fire gongs, fire escapes and the general conduct of appellant's agents, were all properly submitted to the jury."

The court decided that there was a common law liability upon a hotel keeper "to protect his guests from danger when it is reasonably within his power to do so," and cited, besides, § 3104 of the Revised Statutes of the State, 1913, which reads as follows:

"In hotels or lodging houses containing more than fifty

rooms, and being four or more stories high, the proprietor or lessee of each hotel or lodging house shall employ and keep at least one competent watchman, whose duty it shall be to keep watch and guard in such hotel or lodging house against fire and to give warning in case a fire should break out. Such watchman shall be on duty between the hours of 9 o'clock P. M. and 6 o'clock A. M., and in case of fire he shall instantly awaken each guest and all other persons therein, and inform them of such fire. A large alarm bell or gong shall be placed on each floor or story, to be used to alarm the inmates of such hotel or lodging house in case of fire therein. It shall be the duty of every proprietor, or keeper of such hotel or lodging house, in case of fire therein to give notice of same to all guests and inmates thereof at once and to do all in their power to save such guests and inmates."

The statute is attacked on the ground that it contravenes the constitution of the State (with which we have no concern) and the Constitution of the United States. As a foundation for the contention plaintiff in error asserts that the trial court, whose action was affirmed by the Supreme Court of the State, specifically instructed the jury that plaintiff in error "and all his employés and the night watchman at the hotel owed" to defendant in error "the *active duty after the fire had broken out*, [italics counsel's] as follows: (a) To notify him (Strahl) of the existence of the fire so that he might escape unharmed. (b) To do all in their power to save him (Strahl) from the fire, and that failure to perform either of these duties made Rome Miller [plaintiff in error] liable in damages. In other words, the trial court construed the act of 1883, above mentioned, so as to make Rome Miller liable for the penalty mentioned in the act (fine, imprisonment and liable for damages) in the event (1) either he or the watchman or any employé in the hotel *failed to do all in their power* to save Emil J. Strahl [guest in the hotel] from the fire

free of injury or (2) either the proprietor of the Hotel (Miller), the watchman, or any other employé, failed to awaken and notify Strahl of the existence of the fire."

Plaintiff in error admits that the State of Nebraska may "without limit" prescribe "regulations having reference to the performance of acts and the taking of precaution prior to the time when a fire breaks out." But counsel says, "After the fire breaks out we deny that the legislature, under its police power, can compel the inn-keeper or the watchman, or any employé, to do any act which involves a risk to the life and liberty of such person." Such limitation of the police power is expressed in various ways, and that it is not within such power to compel a watchman or other employé to remain in a burning building "for the purpose of doing all in their power to save the lives of the guests and for the purpose of awakening the guests and notifying them of the fire," such lives being, it is added, "just as precious and valuable to the State as is the life of the guest."

We need not pause to consider differences between the value of lives to the State or whether one life is more precious than another to the State or of more concern to the State to preserve than the other. It is quite certain that he who assumes duties may be required to perform them. When plaintiff in error engaged in the business of hotel keeper he undertook its obligations, and we need not consider whether the statute exacts from him and his employés heroic conduct, and not much more need be said in answer to the contentions of plaintiff in error.

The command of the statute is that in case of a fire the keepers of hotels must give "notice of the same to all guests and inmates thereof at once, and to do all in their power to save such guests and inmates." Could the statute exact less? It is the dictate of humanity, and gets nothing from its expression as a legal obligation except a penalty for its violation, and the facts of the case re-

ject any charge that it was enforced to the extent of risk of the life of anybody or to the injury of anybody.

Plaintiff in error was charged with certain acts of omission, the jury found that he was guilty as charged, and the finding was sustained by the trial and supreme courts. We may say without particular review that they were plain violations of duty required by the statute. There was an especially significant fact: the fire was detected by one of the employés of the hotel about 1:30 A. M., and later a guest called the attention of the clerk to the smell of smoke. The clerk was moved by this warning to look into a cuspidor, and no further; and this was two hours before defendant in error awoke to find the halls filled with smoke. The neglect cannot be magnified by comment. If the action of a clerk under such circumstances would be a discharge of duty to one guest it would be a discharge of duty to many guests; if to men, then to women and children, and the tragedy which might result appalls the imagination. But to one or many the duty to investigate when the existence of a fire is indicated or suspected is clear. It is to be remembered that in the case at bar there were indications of fire at 1:30 A. M., and that at 3:30 defendant in error awoke to find the halls filled with smoke. He could get no response to his calls by telephone; he sought the elevator, but it was not running, and, not knowing the location of the stairway, he returned to his room and attempted to escape by means of a rope fire escape. These facts and others referred to by the court justified the jury in concluding that plaintiff in error did not do all in his power to save defendant in error.

It is entirely aside from the questions in the case and the requirements of the statute to consider the dismays and perils of an extreme situation, and what then might be expected of courage or excused to timidity. It was one of the purposes of the statute to preclude such extremity.

It requires careful inspection of conditions especially through the night to detect the existence of fire and prompt action if it is detected. Had these requirements been observed in the present case, defendant in error would not have been permitted to sleep in a burning hotel for two hours until means of escape were cut off by the density of the smoke and the absence of the employés of the hotel from their posts—except by a rope, which proved too weak to sustain his weight.

Plaintiff in error contends further that the statute "is lacking in due process of law" because "it fails to prescribe any fixed rule of conduct." The argument is that the requirement "to do all in one's power" fails to inform a man of ordinary intelligence what he must or must not do under given circumstances.

Rules of conduct must necessarily be expressed in general terms and depend for their application upon circumstances, and circumstances vary. It may be true, as counsel says, that "men are differently constituted," some being "abject cowards, and few only are real heroes;" that the brains of some people work "rapidly and normally in the face of danger while other people lose all control over their actions." It is manifest that rules could not be prescribed to meet these varying qualities. Yet all must be brought to judgment. And what better test could be devised than the doing of "all in one's power" as determined by the circumstances?

The case falls, therefore, under the rule of *Nash* v. *United States*, 229 U. S. 373, and not under the rule of *International Harvester Co.* v. *Missouri*, 234 U. S. 199.

It is objected that as the statute is directed to keepers of hotels having more than fifty rooms and does not apply to keepers of hotels having less, it therefore discriminates against the former and deprives them of the equal protection of the laws. The contention is untenable. *McLean* v. *Arkansas*, 211 U. S. 539; *Williams* v. *Arkansas*,

217 U.·S. 79; *Chicago, Burlington & Quincy R. R.* v. *McGuire,* 219 U. S. .549; *Quong Wing* v. *Kirkendall,* 223 U. S. 59; *Schmidinger* v. *Chicago,* 226 U. S. 578; *Booth* v. *Indiana,* 237 U. S. 391.

*Judgment affirmed.*