Wanamaker, J.,
dissenting after rehearing. Were the majority judges, Jones, Matthias, Robinson and Hough, content to rest the final judgment of this case upon the opinion previously prepared and announced by them, I should be equally content to rest the dissent upon the former state of the record. The reargument has only reinforced my convictions.
Changes made in the majority opinion may be classified as follows:
1. Old matter subtracted.
2. New matter added.
*78 Iii the former opinion of the majority several decisions by the supreme court of the United States were cited, and the reasons in support of them, whereby it was claimed that the judgment in the present case was justified. I undertook to answer those authorities, and to show in my opinion that they not only did not support the majority view in this case, being based on criminal statutes involving criminal prosecutions, but, upon the contrary, that the various doctrines touching definiteness and certainty as held by the supreme court of the United States actually and conclusively supported this dissent. The majority now retreat from those federal cases, and withdraw them from their opinion, thereby at least confessing that if they do not support the dissent they do not support the majority.
For this admission I am grateful. I shall not, however, change my former opinion to conform to their change, in order that their voluntary retreat may have a fitting memorial upon the record of this court, and for other reasons, later apparent in this opinion.
There is another case by the supreme court of the United States as to civil liability, which I quoted, to which they make no answer whatsoever. That is the ease of Miller v. Stahl, 239 U. S., 426, decided in 1915, which case involved a statute of Nebraska, Section 3104, relating to the liability of innkeepers. This was the language of the statute: “It shall be the duty of every proprietor, or keeper of such hotel, or lodging house, in case of fire therein to give notice of same to all guests and inmates, thereof at once and to do all in their power to save such guests and inmates. ’ ’
*79 Direct and urgent objection was made to the language, “all in their power,” as being too indefinite and uncertain to create a legal liability against the hotelkeeper. Justice McKenna’s answer is quoted in my former opinion, but in view of the entire silence of the majority in failing to answer this doctrine I want to repeat this much from Justice Mc-Kenna’s opinion, at page 432 of the report:
“The command of the statute is that in case of a fire keepers of hotels must give ‘notice of the same to all guests and inmates thereof at once, and to do all in their power to save such guests and inmates. ’ Could the statute exact less? It is the dictate of humanity,” etc.
Further along Justice McKenna says at page 434:
“Rules of conduct must necessarily be expressed in general terms * * *. It is manifest that rules could not be prescribed to meet these varying qualities * * *. And what better test could be devised than the doing of ‘all in one’s power,’ as determined by the circumstances.”
This reasoning is clear and convincing, and demonstrates that in the judgment of the supreme court of the United States, in a proper case, the Ohio scaffolding statute would be upheld as creating a legal obligation, in exactly the same way as the Nebraska statute created a legal obligation.
The language of the scaffolding statute, Section 12593, General Code, is as follows, so far as pertinent:
“Whoever, employing * * * another to do or perform labor in erecting, repairing, altering or *80 painting a house, building or other structure, knowingly or negligently furnishes, erects or causes to be furnished * * * unsuitable or improper scaffolding, * * * which will not give proper protection,” etc.
The language of the statute is clear and concise; has been in force for half a century and upheld by the courts as humane, just, clear and constitutional; in short as a lawful statute.
Now. it is held that the statute falls; that it is not embraced within the constitutional language, “any lawful requirement,’,’ and hence is not a lawful statute ; for if it be a lawful statute, it must be a lawful requirement.
It is impossible to reconcile the decision of the United States supreme court on the Nebraska statute with the decision of a majority of the supreme court of Ohio on the Ohio statute. One or the other must be fundamentally and radically wrong. In view of the fact that the Ohio statute found additional support in a special constitutional provision adopted in 1912, while the Nebraska statute was not so supported, is it not the. more likely that the supreme court of the United States is not the one in the wrong? '
But there is still a later case, just recently decided by the supreme court of the United States, dealing with general terms in creating civil liabilities, Edgar A. Levy Leasing Co. v. Siegel, 42 S. C. Rep., 289, decided March 20, 1922. In the opinion of Mr. Justice Clarke the following appears:
“It .is also urged that chapter 944 is invalid because the provision that ‘it shall be a defense to an *81 action by a landlord that the rent demanded is unjust and unreasonable, and that the agreement under which it is sought to be recovered is oppressive/ is too indefinite a standard to satisfy the due process of law clause of the Constitution.
“The report of the Marcus Brown Case shows that this contention was urged in briefs by the same counsel presenting it here, and it is apparent that the standard was impliedly approved as valid in that ease, as it was very clearly approved in the Kirsch Case, supra, the court saying: ‘While the act is in force there is little to decide except as to whether the rent allowed is reasonable, and upon that question the courts are given the last word. ’
‘ ‘ The standard of the statute is as definite as the ‘just compensation’ standard adopted in the Fifth Amendment to the Constitution, and therefore ought to be sufficiently definite to satisfy the Constitution. United States v. L. Cohen Grocery Co., 255 U. S., 81, * * * dealing with definitions of crime, is not applicable. ’’
This holding by the supreme court of the United States, as late as March 20, 1922, declares and demonstrates that the federal criminal cases, referred to by the majority in connection with the federal civil cases decided by the supreme court of the United States, not only justify but demand at the hands of this court a judgment exactly contrary to the judgment herein rendered.
The Ohio supreme court stands solitary and alone in this nullification of conservancy statutes because not sufficiently specific and definite in terms. This requirement makes the enactment of protective statutes practically impossible.
*82 In addition to the significant silence of the majority in failing to answer or even discuss the Nebraska case, supra, and in failing to attempt to distinguish it from the Levy case, supra, their silence is equally significant in failing to answer the cases cited in my former opinion from our own court, concerning indefiniteness and uncertainty in statutory law, particularly the following: Lessee of Cochran’s Heirs v. Loring, 17 Ohio, 409, with a most able opinion by Judge Hitchcock; State, ex rel. Hibbs, v. Bd. of County Commrs. of Franklin Co., 35 Ohio St., 458; Gordon v. State, 46 Ohio St., 607; Beverstock, a Taxpayer, v. Board of Education, 75 Ohio St., 144; and the still later case of State v. Schaeffer, 96 Ohio St., 215.
The latter case involved Section 12603, General Code, which was challenged for unconstitutionality by reason of indefiniteness and uncertainty. The part of the statute involved was as follows:
“At a speed greater than is reasonable or proper, having regard for width, traffic, use and the general and usual rules of such road or highway; or so as to endanger the property, life or limb of any person. ’ ’
This was held to be a valid statute, and that holding is put into the syllabus, and the following judges concurred in that syllabus: Nichols, Newman, Jones, Matthias and Johnson.
There is no answer attempted by the majority to these Ohio cases. It cannot be through inadvertence. The only conclusion is that the cases are unanswerable; that they do not in any wise support the majority opinion.
*83 It is not and cannot be seriously claimed that the meaning of the scaffolding statute is not plain, not clear. The real fundamental objection is that it means too much, imposes too great a duty upon the employer. The measure of that duty has always been recognized as a legislative act. It is now made not a legislative act, but a judicial act.
The supreme court of the United States having held under the Nebraska statute that the language “to do all in their power to save such guests and inmates” is sufficiently definite and certain to conform to the constitutional requirement “due process of law,” and is therefore a lawful requirement, and having held later in the Levy case, supra, that the words “unjust and unreasonable” in connection with the rent, and the word “oppressive” in connection with the agreement between the landlord and the tenant, are also sufficiently definite and certain to comply with “due process of law” and are therefore lawful requirements, and our own supreme court in the Schaeffer case, supra, having held that the language, “speed greater than is reasonable or proper, * * * or so as to endanger the property, life or limb of any person,” is also sufficiently definite and certain to constitute a lawful requirement, how shall it now be held in all consistency and logic that the scaffolding statute, using the words “unsuitable or improper scaffolding * * * which will not give proper protection,” is too indefinite and uncertain, when these latter terms are in no wise more indefinite or more uncertain than similar terms in the other statutes held good by our own supreme court, no less than by the supreme court of the *84 United States! It is a technical distinction with no substantial difference.
Now as to the second change in the opinion of the majority by reason of the rehearing. The new matter added begins with this paragraph, which I quote in full:
“Notwithstanding this legislative check upon this assault made upon the workmen’s compensation law, a smoke screen is being laid behind which another assault is now made, which is more insidious than the former, and more calculated to break down the entire Workmen’s Compensation Law. Counsel who make the attack upon the law practically concede this in their briefs. In their argument, under a topical heading, they ask: ‘Is there any “lawful requirement” left upon the statute books of Ohio?’ They answer: ‘There are very few such statutes in Ohio. ’ Thereupon they cite various sections of the Ohio Code which would hamstring the Workmen’s Compensation Law, and leave only the bare skeleton for its operation. ’ ’
This language involves a most serious charge against all opponents of this decision, but it must be conceded that if it be true that its opponents are engaged in an attack upon the Workmen’s Compensation Law, as authorized by the constitution, the charge is a just one.
The language here, to my mind, is somewhat amusing. It reminds me of the old question: When did you get out of the penitentiary? The question may be a proper and pertinent one, but it presumes or assumes that you were in the penitentiary, which may be a most vicious falsehood. So here we have the *85 presumption or assumption that we are attacking the Workmen’s Compensation Law.
This I deny, and demand the proof. The statute does not make the employer exempt from all negligence when he contributes to the workmen’s compensation fund. Section 35 of the Constitution clearly and expressly forbids the legislature to exempt the employer who is a contributor to the workmen’s compensation fund from a suit at law where he fails to make proper safeguards required by the law for the life, limb, health and safety of the employes.
Obviously the conservation of life, limb, health and safety of the workmen in shops, factories and mines is very largely dependent upon what the employer does toward safeguarding machinery and protecting the workmen from all preventable and dangerous hazards. If the employer observes all lawful requirements, which certainly include any valid statute, he is exempt; the employe must be content with the partial compensation furnished from the workmen’s compensation fund. But, if the employer fails or refuses to provide these safeguards, upon what principle of justice, equity, or humanity should he claim immunity fi’om an action at law?
There was once a “certain lawyer,” and he was a big lawyer, putting big questions in a big way, who asked the great “Judge” of all the following question: “Master, what shall I do to inherit eternal life?” The Judge’s reply was: “What is written in the law?” But the Judge did not stop there. That was only question No. 1. Then came question No. 2, which is really the important question, the one question that distinguishes one judge’s law from *86 another judge’s law, though they both read the same language: “How readest thou?” (Luke 10:25, 26.)
Question No. 1, as applied to this ease, is: “What is written in the law” in Ohio’s Constitution as amended in 1912?
Question No. 2, “How readest thou?” is the question put to every judge, of this court.
The conservation policy of the constitution, as found in Section 34, Article II, is made paramount to all other provisions of the constitution by the express language of that section. Let us read it again.
“Sec. 34. Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power.”
Was this provision, put into the constitution for the first time in 1912, intended to wipe out all protective laws for employes, as is now done by the decision of this court in this case; or was it intended to enlarge the power, to safeguard the power, of the legislature of Ohio touching the conservation of human life, even as against the decisions of this court?
It seems to me this is a pertinent question, for there is nothing left of Section 34 that is practical under this decision limiting a law dealing generally with industrial life to specific and definite terms. Common knowledge and experience, and particularly the above-quoted language from the opinion of Justice McKenna of the United States supreme court, show that it is impossible to put a general statute dealing with general conditions in anything else than general terms.
*87 Now, the sovereign people of Ohio settled this question, or thought they did until this court unsettled it, by expressly providing that when cmy lawful requirement is imposed upon the employer of labor, whether he be a contributor to the workmen’s compensation fund or not, he shall be liable in a common-law action for the injury caused by failure to observe the statute, or perchance the order of some commission created by statute.
Does this court hold that this scaffolding statute is not a lawful statute ? It has been held lawful by our state and federal courts for a half century. What is the holding of this court now? It does not expressly say; and yet the only inference is that it is not a valid statute, because the court says it is not a lawful requirement. If it is a lawful statute, and by all the lawful tests heretofore knoAvn it is and has been so held, then I maintain that it is likewise of necessity a lawful requirement and comes within the constitutional provisions of both Sections 34 and 35.
If this court were as much concerned about the actual attack upon the constitution, Section 34 and the latter part of Section 35, as it seems concerned about the attack upon the compensation law passed by the general assembly, this judgment would be quite contrary to what it is now. If the position of the minority be an attack upon the workmen’s compensation statute, then the Ohio Constitution itself is an attack upon the statute, because the constitution itself imposes upon the employer a duty to observe cmy lawful requirement which the legislature sees fit to impose, and does not give the employer immunity from common-law actions, though he be a contributor to the fund. Neither the statute passed by the legis *88 lature nor the construction of the statute by the supreme court of Ohio has á right to invade and overrule this plain provision and limitation put into the constitution by the sovereign people of the state.
The majority seem concerned not with “what is written in the law, ’ ’ the constitution, but with what is written in the briefs of counsel. It is a novelty indeed to undertake to support an opinion prepared in compliance with the provisions of our Ohio Constitution as to “reasons therefor” (referring to the judgment) by quoting the law from the briefs of counsel. Counsel’s briefs are very often helpful in calling attention to the legal questions involved, and the principles and authority by which they are sustained. They are often used as admissions of fact, but I never knew the Marshalls, the Cooleys, the Ranneys or the Thurmans to use them in support of the law or logic by which a judgment is justified.
Slaughter oe the Statutes.
In my former opinion I called attention to the legal consequences of this judgment. The following language was therein used:
“It [this court] has practically nullified all conservation statutes, which must of necessity by their very nature be made in general terms. You cannot deal specifically with all .the varied machinery, appliances, and places of employment. General words alone, describing the degree of safety, are all that the situation and circumstances will permit. Yet, all such statutes are practically nullified by this decision.”
No answer has been made or attempted to this indictment against the majority opinion.
*89 I renew, the charge.
Section 1027, General Code, is introduced by this language: “Provisions to prevent injury to persons who use or come in.contact with machinery.”
The first sentence of the section reads: “The owners and operators of shops and factories shall make suitable provisions to prevent injury to persons who use or come in contact with machinery therein or any part thereof as follows. ’ ’ Then follow some fifteen different paragraphs dealing in general terms, general language, with the duty of the employer in safeguarding machinery, places to work, shafting, shifts, hallways, emery wheels, and almost every kind and variety of dangerous devices and situations in all the various kinds of shops and factories. This statute directly affects and safeguards the life, limb, health and safety of the great majority of men, women and children who work in the shops and factories of the state. By this decision, this statute is literally and logically wiped out of the books, and the majority in effect admit that it is so wiped out, in the opening paragraph of the new matter inserted in their opinion, particularly by this question, “Is there any ‘lawful requirement’ left upon the statute books of Ohio?” And its answer : ‘ ‘ There are very few such statutes in Ohio. ’ ’ The majority do not deny that conclusion as the result of this judgment.
By the same logic it follows that all other similar statutes likewise fall, and the workingmen and workingwomen of the state of Ohio to-day are wholly without any statutory protection, either criminal or civil, as a result of this decision. Their *90 safety and health are to be put in constant danger, their lives and limbs slaughtered, and their redress is the pittance provided in the Workmen’s Compensation Law, $5,000 for the loss of life.
Many years ago the general assembly of Ohio passed an act limiting the amount to be recovered in an action for wrongful death at $10,000. The Constitutional Convention of 1912 said that that was a gross outrage, an unfair and unreasonable limitation. It therefore provided an amendment to the Bill of Bights, Article I, Section 19a, as follows:
“The amount of damages recoverable by civil action in the courts for death caused by the wrongful act, neglect, or default of another, shall not be limited by law.”
Clearly this nullified that old statute and deprived the legislature of all power to again limit the amount to even $15,000, $20,000, or any other sum. Yet, by this decision of the majority of this court, as to all contributors to the workmen’s compensation fund, this limit for wrongful death caused by the violation of any statute is now not $10,000, but $5,000.
This, after all, is only another illustration that the sovereign people may make all the constitutional provisions they please, and the supreme court, under the mask of construction, may so change those constitutional provisions that they are almost beyond identification.
A man killed in the street by violation of the automobile traffic statute may recover $20,000, but the workman in the shop who has been killed by a violation of the statutes providing safeguards for machinery, where his employer is a contributor to the *91 workmen’s compensation fund, as nearly all of them are, may recover only the $5,000 provided for in that statute. What becomes of the constitutional provision “Equal protection of the laws?”
But the vice in this judgment is not limited merely to those statutes enacted for the protection of the workingman in the workshops, mines and factories. Every statute imposing a duty, civil or criminal, is challenged and jeopardized by the law and logic declared by the mere majority of this court.
You cannot have one rule of definiteness as to one class of people, and another rule of definiteness as to another class of people, when it comes to construing statutes. Scarcely a statute of Ohio but what may be subject to a new challenge against its validity because written in broad general terms, and of necessity so. The whole state of our statutory law is put into hopeless confusion instead of being simplified and stabilized as it should be.
The majority opinion undertakes to say that the Ohio Federation of Labor in its brief filed in this court is quite content with the conclusion reached in this case. When the industrial army of the state of Ohio fully realize what has happened to the conservation statutes of Ohio by virtue of this decision, that their lives and limbs have been further endangered, that henceforth their employers need take no care nor expend any money for the safeguarding of dangerous machinery, or dangerous places to work, or dangerous appliances, that the workmen at most will be limited to what they are to get out of the Workmen’s Compensation Law, and that the employers are free from any suit at law, then I fear *92 that the workmen of Ohio will not look with such supreme satisfaction upon this ¡judgment as 'the opinion of the majority of the court seems to indicate.
Surely the great industrial army of Ohio do not approve of the further endangering or cheapening of human life and limb in our factories and workshops. I gladly concede to the majority an honest difference of opinion. That honest difference in opinion does not arise out of the question, “What is written in the law?” We all know that. We all have read the constitution. We all have read the statutes. We all have read the various decisions of the courts, state and federal. The primary and paramount differences, however, grow out of the second question, “How readest thou?” Do we read it as the constitution-makers intended it, as the constitution-makers plainly put it? Do we read it from the standpoint of the employe, whose life, limb and health were intended to be protected, or do we read it from the standpoint of a small circle of coldblooded employers, who prefer their cash to the life and limb of the workingman?
The dictates of humanity, justice, and sound reasoning call for a contrary judgment.
Many big constitutional questions have been before this court during the past year. The emergency clause of the late reorganization bill aroused much interest. This court was seriously divided, and by a vote of four to three the statute providing for reorganization was sustained. The majority opinion made vigorous appeal in favor of sustaining statutes, as shown by the opinion. Now, by this júdg *93 ment, not one, but a multitude of statutes are stricken down by the same division of the court. They are not only stricken down for the present, but the doctrine announced in this case, so long as it shall stand upon the records of this court, makes practically impossible the enactment of any other statutes for the protection of the life, limb, safety and health of the workingman.
The zeal of this court for the reorganization statute is in marked contrast to its indifference to the many statutes on our books designed for the protection of human life and limb, health and safety, that would seem to be primary and paramount considerations of constitutional government, all of which must fall as the result of this decision.
Ohio stands alone in the announcement of this new doctrine, whereby the safety statutes of Ohio are successfully submarined, and become only a byword and a memory.
The claim of the majority that the duty imposed by the scaffolding statute is merely common-law duty T emphatically deny. Else why the statute? It is not a codification, but a new statement of a new and higher duty, all of which I will discuss in the Sniegowski case, post, 161, involving the statute against unguarded, dangerous machinery, decided on this same date.