STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. KINNEY BUILDING DRUG STORES, INC., *ET AL.*, DEFENDANTS-APPELLANTS.

Essex County Court
Law Division

Decided May 11, 1959.

Mr. *Martin J. Loftus,* Deputy Attorney General, argued the cause for the plaintiff-respondent (Mr. *Brendan T. Byrne,* Acting Prosecutor of Essex County, attorney).

Mr. *Ronald G. Targan* argued the cause for the defendants-appellants.

Mr. *Joseph H. Stamler,* appearing for Ortho Pharmaceutical Corp. and Youngs Rubber Corp., argued the cause *amicus curiae* (Messrs. *Lorentz* and *Stamler,* attorneys).

Mr. *John J. Rafferty,* attorney for the New Jersey Catholic Conference, argued the cause *amicus curiae.*

Mr. *Harrison F. Durand,* appearing for Essex County Committee for Planned Parenthood, argued the cause *amicus curiae* (Mr. *Morris L. Ernst,* Miss *Harriet F. Pilpel,* and Miss *Nancy F. Wechsler,* all of the New York Bar, of counsel).

Mr. *Herbert D. Kelleher,* appearing for Diocesan Council of the Protestant Episcopal Diocese of Newark, argued the cause *amicus curiae* (Messrs. *Lum, Fairlie & Foster,* attorneys).

Mr. *George A. Breur,* attorney for New Jersey Council of Churches, argued the cause *amicus curiae.*

CONKLIN, J. C. C. These three matters come before the court on appeals from the Newark Municipal Court. Although no testimony was taken before this court, it is agreed between the parties that on September 25, 1958 detectives in the employ of the Newark Police Department purchased articles for the prevention of conception. The sales were made in the Kinney Building Drug Stores, Inc., one by the registered pharmacist, and the other by his assistant. Apparently, neither of the persons inquired as to the cir-

cumstances under which they would be put to use, nor did they inquire as to why the purchases were being made.

As the direct and proximate result of these two sales, the Kinney Building Drug Stores, Inc., and its two employees were charged with violation of *N. J. S.* 2*A*:170–76, a section of the Disorderly Persons Act.

The complaint against Kinney states:

"He said Kinney Building Drug Store, Inc., did then and there without just cause possess with the intent to utter same, certain things purported to be designed for the prevention of conception, in violation of *R. S.* 2*A*:170–76, on the twenty-fifth day of September, A.D., 1958, at Newark, aforesaid."

As to the individual defendants, it is complained:

"* * * did then and there utter without just cause a thing purporting to be designed for the prevention of conception * * *."

The trials in the Newark Municipal Court resulted in convictions of all three defendants and, pursuant to *R. R.* 3:10–1 *et seq.,* the three defendants appealed to the Essex County Court. The three defendants moved for "a more specific complaint," which motions were denied. The Kinney Building Drug Stores, Inc., now moves, in which the other defendants join by amendment of the pleadings and with consent of the State, to dismiss the said complaints for the reason that the statute upon which the alleged offenses are predicated, *N. J. S.* 2*A*:170–76, is unconstitutional under both the *N. J. Const.* 1947, *Art.* I, *par.* 1, and the *U. S. Const., Amend.* XIV, § 1.

"Section 1. * * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The court would be remiss in not commenting that the question posed was not only well briefed and argued by the State (the State properly represented pursuant to *R. R.*

4:37–2), and the defendants, but the *amici curiae* as well, namely, the New Jersey Catholic Conference, Episcopal Diocese, Youngs Rubber Corp., Ortho Pharmaceutical Corp., New Jersey Council of Churches, and the Essex County Committee for Planned Parenthood.

The statute under scrutiny reads as follows:

> "2A:170–76. Uttering or exposing to view instruments, medicines, etc.; to prevent conception or procure abortion
>
> Any person who, without just cause, utters or exposes to the view of another, or possesses with intent to utter or expose to the view of another, or to sell the same, any instrument, medicine or other thing, designed or purporting to be designed for the prevention of conception or the procuring of abortion, or who in any way advertises or aids in advertising the same, or in any manner, whether by recommendation for or against its use or otherwise, gives or causes to be given, or aids in giving any information how or where any such instrument, medicine or other thing may be had, seen, bought or sold, is a disorderly person."

Blackstone stated, "Law is the embodiment of the moral sentiment of the people." There is no question but that the State can control the sale of contraceptive material. The question of the authority of the State under its police power to regulate contraception between husband and wife, joined in lawful wedlock, has been tangentially averted to in both the briefs and oral argument. This court will pass no opinion on whether the State may regulate contraception between married people under its police power to promote health, safety, welfare, and morals of the community. In addition, in resolving the constitutionality of the statute under consideration, the aggravated factual context under which these complaints arose can play no part in the disposition of the issue. We are now concerned only with whether the statute is constitutional on its face. An embarrassing and controversial factual situation will not be allowed to distract from a detached consideration of the statute.

It is now well settled under both federal and state adjudications that a penal statute must specify the elements

of the offense it proscribes with at least a reasonable degree of certainty. *Winters v. People of State of New York,* 333 *U. S.* 507, 68 *S. Ct.* 665, 92 *L. Ed.* 840 (1948); *Lanzetta v. State of New Jersey,* 306 *U. S.* 451, 59 *S. Ct.* 618, 83 *L. Ed.* 888 (1939); *Connally v. General Construction Co.,* 269 *U. S.* 385, 46 *S. Ct.* 126, 70 *L. Ed.* 322 (1926); *State v. Russo,* 6 *N. J. Super.* 250 (*App. Div.* 1950); *State v. Klapprott,* 127 *N. J. L.* 395 (*Sup. Ct.* 1941); *State on Complaint of Lief v. Packard-Bamberger & Co., Inc.,* 123 *N. J. L.* 180 (*Sup. Ct.* 1939).

 Due process of law imposes upon a state an obligation to frame its criminal statutes so that those to whom they are addressed may know what standard of conduct is intended to be required. *Cline v. Frink Dairy Co.,* 274 *U. S.* 445, 47 *S. Ct.* 681, 71 *L. Ed.* 1146 (1927); *Connally v. General Construction Co., supra; Collins v. Commonwealth of Kentucky,* 234 *U. S.* 634, 34 *S. Ct.* 924, 58 *L. Ed.* 1510 (1914); *American Seeding Machine Co. v. Commonwealth of Kentucky,* 236 *U. S.* 660, 35 *S. Ct.* 456, 59 *L. Ed.* 773 (1915); *Waters-Pierce Oil Co. v. State of Texas,* 212 *U. S.* 86, 29 *S. Ct.* 220, 53 *L. Ed.* 417 (1909); *Fox v. State of Washington,* 236 *U. S.* 273, 35 *S. Ct.* 383, 59 *L. Ed.* 573 (1915); *Omaechevarria v. State of Idaho,* 246 *U. S.* 343, 38 *S. Ct.* 323, 62 *L. Ed.* 763 (1918); *Miller v. Strahl,* 239 *U. S.* 426, 36 *S. Ct.* 147, 60 *L. Ed.* 364 (1915); *Tedrow v. A. T. Lewis & Son Dry Goods Co.,* 255 *U. S.* 98, 41 *S. Ct.* 303, 65 *L. Ed.* 524 (1921); *Weeds, Inc. v. United States,* 255 *U. S.* 109, 41 *S. Ct.* 306, 65 *L. Ed.* 537 (1921); *Kinnane v. Detroit Creamery Co.,* 255 *U. S.* 102, 41 *S. Ct.* 304, 65 *L. Ed.* 531 (1921).

If a penal enactment fails to meet this standard, it violates the requirement of due process of law of both the State and U. S. Constitutions, *supra.* The constitutional provisions have put it beyond the power of the Legislature or the courts to abrogate due process. It would follow, as a matter of course, that these provisions of the Constitutions insure the general rule of the common law that statutes are not to

embrace offenses which are not within their intention and terms. This does not mean that all of the elements of a crime must be set out in the statute on which the prosecutor relies, nor that the statute may not create an offense by the use of inept or imperfect phraseology. But the offense must be in some way declared by the legislative power, and cannot be construed by the courts from any supposed intention of the Legislature which the statute fails to state. If a penal enactment does not enable a citizen to gauge whether his intended course of conduct will be in violation of law, if the trier of the facts cannot evaluate guilt or innocence by a known and definite pre-established standard, the statute violates the requirement of due process of law.

The question for determination is whether a statute which penalizes the possession of a contraceptive device "without just cause," or uttering a contraceptive device "without just cause," establishes a standard by which a prospective defendant may gauge his conduct as well as enable a court to posit a rule of law in the trial of the facts?

The State contends that "without just cause" is capable of interpretation and means without logical cause, citing *Donaghy v. State*, 6 *Boyce* 467, 29 *Del.* 467, 100 *A.* 696 (*Sup. Ct.* 1917); and *State v. Viering*, 187 *La.* 332, 174 *So.* 641 (*Sup. Ct.* 1937), as cases wherein the courts had no difficulty in interpreting the intent. With these decisions we take no issue, for therein the statute under consideration was but a reiteration of the common-law obligation of a parent to support its child, and circumstances constituting "just cause" in such cases are patent, to wit, illness, unemployment, imprisonment, and such disabilities. In a case of discharge of an employee we have no difficulty, for there is a standard of conduct for an employee to which most all subscribe. A like standard may suffice in a civil statute dealing with unemployment, because of the basic concept of unemployment. *Krauss v. A. & M. Karagheusian, Inc.*, 13 *N. J.* 447 (1953).

One *amicus curiae* suggests that the court set a standard by an interpretation of "just cause" as sale in a registered pharmacy by a licensed pharmacist or by a person under his supervision. It is argued that contraceptives are under the control of federal regulation by the enforcement of the U. S. Food and Drug Act as well as our own state act, and, therefore, they are not *malum per se*. Another suggests that without "just cause" should be determined by the court in each particular case as it arose. The court finds itself unable to set a standard of "just cause" which would leave the statute in anything but confusion. One court might hold that a married couple could prevent conception for any reason whatsoever, and such a sale would be with "just cause." Another might hold that spacing of the birth of children is with "just cause." It can be argued that extreme poverty is "just cause." A hereditary disability that would manifest itself in the offspring would be strongly argued by some as "just cause." The possible death of a wife in childbirth would be held by some to be "just cause."

The court is mindful that there are strong feelings that sexual relations are immoral unless they are for procreation. States can be enumerated where there is an outright ban without regard to health or life. *State v. Nelson*, 126 *Conn.* 412, 11 *A.* 2d 856 (*Sup. Ct. Err.* 1940); *Tileston v. Ullman*, 129 *Conn.* 84, 26 *A.* 2d 582 (*Sup. Ct. Err.* 1942). They would resolve that all purchases are without "just cause."

There are those who take a diametrically opposite view, not devoid of reason—for example, the Surgeon General of the U. S. Army. Between these two terminal points we have myriad gradations of "just cause." The ultimate decision necessarily hinges upon the social, religious, economic, and environmental orientation of the individual. Whatever one's personal opinion of the problem, this much is clear: the onus belongs to the Legislature to make the final determination and not to the courts via a vague penal statute. *United States v. L. Cohen Grocery Co.*, 255 *U. S.*

81, 41 *S. Ct.* 298, 65 *L. Ed.* 516; *United States v. Reese,* 92 *U. S.* 214, 221, 23 *L. Ed.* 563 (1876).

Two cases have been decided in this State which have wrestled with the meaning, if any, of the phrase, "without just cause." In *State v. Tracy,* 29 *N. J. Super.* 145 *(App. Div.* 1953), certification denied 15 *N. J.* 79 (1954), the interpretation of the phrase was pure *obiter dictum* and not necessary to the adjudication of the case (sale of contraceptives in a vending machine in a gasoline service station); and in *State v. Kohn,* 42 *N. J. Super.* 578 *(Cty. Ct.* 1956), the court concluded that "just cause" was "proper medical care *and the like.*" (Emphasis added)

In the case of *Connally v. General Const. Co., supra,* the Supreme Court cogently set forth these basic principles:

"The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizens cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements, constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for these violations, should not admit of such a double meaning that the citizens may act upon the one conception of its requirements and the courts upon another." [269 *U. S.* 393, 46 *S. Ct.* 128.]

In *United States v. L. Cohen Grocery Co., supra* [255 *U. S.* 81, 41 *S. Ct.* 299], the statute used the phrase "unjust and unreasonable," and here again the Supreme Court struck down the statute as being unconstitutional on the grounds of vagueness:

"Congress alone has power to define crimes against the United States. This power cannot be delegated either to the courts or to the juries of this country. * * *

Therefore, because the law is vague, indefinite, and uncertain, and because it fixes no immutable standard of guilt, but leaves such standard to variant views of the different courts and juries which may be called on to enforce it, and because it does not inform the defendant of the nature and cause of the accusation against him."

In the case of *Lanzella v. State of New Jersey,* 306 *U. S.* 451, 59 *S. Ct.* 618, 621, 83 *L. Ed.* 888 (1939), the Supreme Court declared the statute passed by the New Jersey Legislature to be unconstitutional because of its failure to be certain in description and failure to set forth a standard of guilt:

"It would be hard to hold that, in advance of judicial utterances upon the subject, they were bound to understand the challenged provision according to the language later used by the court."

This is a field in which legislation is badly needed. But the statute under consideration says all things to all men (who can argue with a concept such as "just cause" or "justice"), without granting to the prospective defendant his constitutional right to be fairly apprised of the elements constituting a *quasi*-criminal infraction. The words of the statute, "without just cause," are vague and indefinite and incapable of judicial or lay construction in a statute of this type, wherein there has not beeen established any precedent or common-law norm of what is proper or improper. Because of the vague and indefinite nature of the statute under consideration, the court holds it to be an unconstitutional enactment under both the New Jersey and the United States Constitutions, *supra.* The complaints should be dismissed and the fines remitted.

Let an appropriate order be submitted.