THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* HORACIO FIGUEROA, Defendant and Appellant.

No. 5467. Argued January 30, 1935.—Decided June 28, 1935.

*Felipe Colón Díaz* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

 Figueroa was convicted of a violation of subdivision (*a*) of section 12 of the Act to regulate the operation of motor vehicles (Session Laws of 1916, pp. 140, 147). That subdivision provides:

"That persons operating motor vehicles on the public highway shall at all times exercise due care and take every reasonable precaution to insure the safety of persons and property."

The complaint filed in the municipal court charged that:

". . . . the said Horacio Figueroa was operating the heavy motor vehicle plate-number H–469 without exercising' due care or taking every reasonable precaution to insure the safety of persons and property, with one of the back covers (*tapas*) of the said truck swinging by a rope from one side to the other in such a way that on passing complainant at h. 9 of the said road, the said cover (*tapa*) struck him in such a manner that it threw him to the ground, seriously injuring him and leaving him unconscious, with his skull fractured, with the result that he had to be confined in the Hospital de Damas de Ponce."

The district court when the case came on to be heard *de novo,* overruled a demurrer for alleged failure to state an offense, and this is assigned as error. Appellant relies on *People* v. *Borque,* 25 P.R.R. 553, and *People* v. *Rivera,* 26 P.R.R. 392. The complaint in the *Borque* case set forth that ". . . the said defendant, while driving his own car No. 519, willfully and maliciously failed to take proper precautions in the operation of said car to insure the safety of lives and property, causing the car to strike the boy Joaquín Solá,

who received bruises for which he was treated in the emergency hospital at Santurce." The district attorney insisted that the complaint was good because it followed the language of the statute. What was said in the *Borque* case must be construed in the light of the facts and of the question before this court. The complaint did not state an offense either under subdivision (*a*) or under any other subdivision of section 12 of the law. The contention of the district attorney could not have been sustained even if the complaint had followed literally the words of subdivision (*a*). That subdivision prescribes in broad and general terms a rule of conduct for persons operating motor vehicles on the public highway. It is not enough in such cases that the complaint should follow the language of the statute. It must be more specific so as to apprise the defendant more definitely as to the nature of the accusation against him. This is the general principle underlying the *Borque* case which was followed by this court in *People* v. *Rivera, supra; People* v. *Salgado,* 27 P.R.R. 804; *People* v. *Matienzo,* id. 838, and distinguished in *People* v. *García,* 28 P.R.R. 898.

This court has never said, in a case like the one at bar, that it would be impossible to state an offense under subdivision (*a*), unless that offense be also included in some other subdivision of section 12. Anything contained in previous opinions that might be so construed by inference or implication must be regarded as *obiter dicta* because we have not heretofore been called upon to consider a case such as the one before us. We are now confronted for the first time with a complaint which plainly sets forth an offense covered by the provisions of subdivision (*a*) and not covered by any of the other subdivisions of section 12 of the law. Subdivision (*a*) is not a mere preamble or introductory paragraph. It is complete in itself and wholly independent of the other subdivisions of section 12. Each of the other subdivisions is likewise complete in itself and wholly independent of subdivision (*a*). A violation of any one of these

other subdivisions might be charged as a separate offense without any reference whatsoever to subdivision (a). A violation of some one or more of these other subdivisions might be charged also by way of specification as a violation of subdivision (a). This, however, is not true of all of the other subdivisions. A violation of subdivision (h) for example, could not be charged in the language of that subdivision, without more, as a violation of subdivision (a). A violation of subdivision (b) would not be in any sense a violation of subdivision (a). Subdivision (a), on the other hand, covers quite a number of offenses which could not be charged as a violation of any of the other subdivisions. A driver who, for instance, backs his car suddenly and without warning from a side street into a crowded thoroughfare with reckless disregard for the safety of persons and property would be guilty of a flagrant violation of subdivision (a) but could not be successfully charged with a violation of any of the other subdivisions. The case at bar is another shining example. We need not multiply instances of this sort. If none other than violations of the other subdivisions can be charged as a violation of subdivision (a) then the Legislature did a vain and idle thing in the enactment of that subdivision and we cannot bring ourselves to believe that this was the legislative intent. Hence, we hold that the district court did not err in overruling the demurrer.

The second assignment is that the judgment is contrary to the law and the evidence. The gist of the argument is that the prosecuting witness was guilty of contributory negligence in travelling in the same direction as was the truck on the left hand side of the road, instead of on the right. Such contributory negligence, if any, was no defense and the contention as developed in the brief for appellant is without merit.

What we have said disposes of the questions raised by appellant. In the course of our own discussion of the

case, however, the validity of the statute itself has been challenged. In support of the view that it is void for uncertainty our attention has been invited to the following authorities: *Czarra* v. *Board of Medical Supervisors,* 25 App. D. C. 443; *United States* v. *Capital Traction Co.,* 34 App. D. C. 592; *United States* v. *Cohen Grocery Co.,* 255 U.S. 81; *Connally* v. *General Construction Company,* 269 U.S. 385; *State of West Virginia* v. *Lantz,* 26 A.L.R. 894; *State* v. *Diamond,* 20 A.L.R. 1527; *Cinadr* v. *State,* 300 S.W. 64, and *Stevenson* v. *Houston, T.C.R. Co.,* 19 S.W. (2d) 207.

In the note to *State of West Virginia* v. *Lantz,* (1922) at page 898, the annotator says:

"Although the Georgia and Pennsylvania cases, as shown infra, are in conflict, it is generally held that statutes or ordinances providing that no person shall operate or drive any motor vehicle recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic, and use of the highways, and the general and usual rules of the road, or so as to endanger the property, life, or limb of any person, are not invalid on the ground that they are too vague, uncertain, and indefinite to sustain a criminal conviction."

After citing cases from Nebraska, Ohio and Wisconsin, the annotator quotes two interesting extracts from *Mulkern* v. *State,* (1922–Wis.) 187 N.W. 190; and *State* v. *Schaeffer,* (Ohio) 117 N.E. 220. See also *Gallaher* v. *State,* (1923) 29 A.L.R. 1059, and note; *Commonwealth* v. *Pentz,* 247 Mass. 500, 143 N.E. 322; and *People* v. *Maki,* 223 N.W. 70.

In the Supreme Court of the United States there are two lines of decisions, readily distinguishable one from the other and repeatedly distinguished by the Supreme Court itself. One of these lines includes such cases as *United States* v. *Cohen Grocery Co.,* and *Connally* v. *General Construction Co., supra.* The other includes such cases as *Nash* v. *United States,* 229 U.S. 373; *Miller* v. *Strahl,* 239 U.S. 426, and *Omaechevarria* v. *Idaho,* 246 U.S. 343.

In the *Nash* case the court was dealing with the criminal provisions of the Sherman Anti Trust Act and, speaking through Mr. Justice Holmes, said:

"The objection to the criminal operation of the statute is thought to be warranted by *The Standard Oil Co.* v. *United States,* 221 U. S. 1, and *United States* v. *American Tobacco Co.,* 221 U. S. 106. Those cases may be taken to have established that only such contracts and combinations are within the act as, by reason of intent or the inherent nature of the contemplated acts, prejudice the public interests by unduly restricting competition or unduly obstructing the course of trade. 221 U. S. 179. And thereupon it is said that the crime thus defined by the statute contains in its definition an element of degree as to which estimates may differ, with the result that a man might find himself in prison because his honest judgment did not anticipate that of a jury of less competent men. The kindred proposition that 'the criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty,' is cited from the late Mr. Justice Brewer sitting in the Circuit Court. *Tozer* v. *United States,* 52 Fed. Rep. 917, 919.

"But apart from the common law as to restraint of trade thus taken up by the statute the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure according to the degree of danger attending it' by common experience in the circumstances known to the actor. 'The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw.' *Commonwealth* v. *Pierce,* 138 Mass. 165, 178; *Commonwealth* v. *Chance,* 174 Mass. 245, 252. 'The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' I East P. C. 262. If a man should kill another by driving an automobile furiously into a crowd he might be convicted of murder however little he expected the result. See *Reg.* v. *Desmond,* and other illustrations in Stephen, Dig. Crim. Law, art. 223, 1st ed., p. 146. If he did no more than drive negligently through a street he might get off with man-

slaughter or less. *Reg.* v. *Swindall,* 2 C. & K. 230; *Rex* v. *Burton,* 1 Strange, 481. And in the last case he might be held although he himself thought that he was acting as a prudent man should. See *The Germanic,* 196 U. S. 589, 596. But without further argument, the case is very nearly disposed of by *Waters-Pierce Oil Co.* v. *Texas* (No. 1), 212 U. S. 86, 109, where Mr. Justice Brewer's decision and other similar ones were cited in vain. We are of opinion that there is no constitutional difficulty in the way of enforcing the criminal part of the act."

In *Miller* v. *Strahl* the court was discussing the constitutionality of a state statute which made it the duty of all proprietors of hotels of a specified class "in case of fire therein to give notice of same to all guests and inmates thereof at once and to do all in their power to save such guests and inmates." From the opinion of the court by Mr. Justice, McKenna, we take the following extract:

"Plaintiff in error contends further that the statute 'is lacking in due process of law' because 'it fails to prescribe any fixed rule of conduct.' The argument is that the requirement 'to do all in one's power' fails to inform a man of ordinary intelligence what he must or must not do under given circumstances.

"Rules of conduct must necessarily be expressed in general terms and depend for their application upon circumstances, and circumstances vary. It may be true, as counsel says, that 'men are differently constituted,' some being 'abject cowards, and few only are real heroes;' that the brains of some people work 'rapidly and normally in the face of danger while other people lose all control over their actions.' It is manifest that rules could not be prescribed to meet these varying qualities. Yet all must be brought to judgment. And what better test could be devised than the doing of 'all in one's power' as determined by the circumstances?

"The case falls, therefore, under the rule of *Nash* v. *United States,* 229 U. S. 373, and not under the rule of *International Harvester Co.* v. *Missouri,* 234 U. S. 199."

In *Omaechevarria* v. *Idaho,* the court had under consideration a state statute which prohibited "any person having charge of sheep who allows them to graze on any range previously occupied by cattle," and further provided

738

that: "priority of possessory right between cattle and sheep owners to any range is to be determined by the priority in the usual and customary use of it, as a cattle or sheep range." The opinion of the court delivered by Mr. Justice Brandeis reads in part as follows:

"*Second:* It is also urged that the Idaho statute, being a criminal one, is so indefinite in its terms as to violate the guarantee by the Fourteenth Amendment of due process of law, since it fails to provide for the ascertainment of the boundaries of a 'range' or for determining what length of time is necessary to constitute a prior occupation a 'usual' one within the meaning of the act. Men familiar with range conditions and desirous of observing the law will have little difficulty in determining what is prohibited by it. Similar, expressions are common in the criminal statutes of other States. This statute presents no greater uncertainty or difficulty, in application to necessarily varying facts, than has been repeatedly sanctioned by this court. *Nash* v. *United States,* 229 U. S. 373, 377; *Miller* v. *Strahl,* 239 U. S. 426, 434."

In *Cline* v. *Frink Dairy Company,* 274 U.S. 445, Mr. Chief Justice Taft wrote the opinion of the court. A Colorado Anti Trust statute was held to be unconstitutional. The case followed *United States* v. *Cohen Grocery Company, supra,* and other cases of that class which were reviewed at length. The doctrine of the *Nash* case, however, was reaffirmed and distinguished at page 464, in this wise:

". . . It is true that, on an issue like negligence, i. e., a rule of conduct for the average man in the avoidance of injury to his neighbors, every one may be held to observe it either on the civil or criminal side of the court. It is a standard of human conduct which all are reasonably charged with knowing and which must be enforced against every one in order that society can safely exist. We said in the *Nash* case (p. 377), 'But apart from the common law as to restraint of trade thus taken up by the statute the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur the penalty of imprisonment, as here; he may incur the penalty of death. "An act causing death may be murder, manslaughter, or misadventure according to the

degree of danger attending it'' by common experience in the circumstances known to the actor . . . ''The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.'' 1 East P. C. 262.'

Following the authority in the *Nash* case, we sustained in *Miller* v. *Oregon, per curiam,* 273 U.S. 657, a conviction of manslaughter under a statute of Oregon, which made the following rule of conduct a standard of criminality:

'' 'Every person operating a motor vehicle on the public highways of this state shall drive the same in a careful and prudent manner, not to exceed thirty miles per hour, and within the limit of incorporated cities and towns not to exceed twenty miles per hour, and at intersections and schoolhouses not to exceed twelve miles per hour, and in no case at a rate of speed that will endanger the property of another, or the life or limb of any person.' (Ch. 371, General Laws of Oregon, 1921, Section 2, sub-division 16.)

''The indictment was framed under the last clause of this statute. Such standard for the driver of an automobile on a highway is one to which it is neither harsh nor arbitrary to hold those criminally who operate such a possibly dangerous instrument of locomotion, and who are or ought to be aware of what degree of care is necessary to avoid injury to others under the conditions that prevail on a highway. See *Hess* v. *Pawloski, ante,* p. 352.

''But it will not do to hold an average man to the peril of an indictment for the unwise exercise of his economic or business knowledge involving so many factors of varying effect that neither the person to decide in advance nor the jury to try him after the fact can safely and certainly judge the result. When to a decision whether a certain amount of profit in a complicated business is reasonable is added that of determining whether detailed restriction of particular anti-trust legislation will prevent a reasonable profit in the case of a given commodity, we have an utterly impracticable standard for a jury's decision. A legislature must fix the standard more simply and more definitely before a person must conform or a jury can act.''

Comment would seem to be superfluous. Our conclusion is that subdivision (*a*) is not void for uncertainty.

The judgment appealed from must be affirmed.

Mr. Justice Wolf, dissenting.

I dissent.

*Czarra* v. *Board of Medical Supervisors,* 25 App. D. C. 443. On page 447 the court resumes the facts as follows:

"The appellant was first brought before the board of medical supervisors in January, 1904, and his licence ordered revoked upon a complaint made of unprofessional and dishonorable conduct in the distribution of obscene literature. The obscene literature consisted of a pamphlet purporting to relate to the cause, prevention, and cure, among other things, of venereal and secret diseases, and of certain filthy and indecent habits and practices. Upon appeal to this court the order was reversed because of the insufficiency of the complaint. *Czarra* v. *Medical Supervisors,* 24 App. D. C. 251."

In *United States* v. *Capital Traction Co.,* 34 App. D. C. 592, the court says (on p. 597):

"This court, in the case of *Czarra* v. *Medical Supers.,* 25 App. D. C. 443, construing a statute which provided that any licentiate of the board was subject to have his license revoked upon being found guilty of unprofessional or dishonorable conduct, said: 'The single question to be determined is whether, independently of the causes mentioned "unprofessional or dishonorable conduct," as declared in the act, are sufficiently specific and certain to warrant a conviction thereof and the exercise of the power of revocation by the board of medical supervisors . . . In all criminal prosecutions the right of the accused to be informed of the nature and cause of the accusation against him is preserved by the 6th Amendment. In order that he may be so informed by the indictment or information presented against him, the first and fundamental requisite is that the crime or offense with which he stands charged shall be defined with reasonable precision. He must be informed by the law, as well as by the complaint, what acts or conduct are prohibited and made punishable. In the exercise of its powers to regulate the conduct of the citizen, within the constitutional limitations, and to declare what shall constitute a crime or punishable offense, the legislature must inform him with reasonable precision what acts are intended to be prohibited.' "

The court, however, in the *Czarra* case also said:

" 'Every man should be able to know with certainty when he is committing a crime.' *United States* v. *Reese,* 92 U. S. 214, 220, 23 L. Ed. 563, 565,"

and then went on to say:

"This obvious duty must be performed by the legislature itself, and cannot be delegated to the judiciary. It may, doubtless, be accomplished by the use of words or terms of settled meaning, or which indicate offenses well known to and defined by the common law. Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible. But when the legislature declares an offense in words of no determinate signification, or its language is so general and indefinite as that it may embrace within its comprehension, not only acts commonly recognized as reprehensible, but others also which it is unreasonable to presume were intended to be made criminal, the courts, possessing no arbitrary discretion to discriminate between those which were and those which were not intended to be made unlawful, can do nothing else than declare the statute void for its uncertainty."

And further on in the *Czarra* case the court said:

"Doubtless all intelligent and fair-minded persons would agree in the opinion of the board of medical supervisors that the act charged against the appellant in the case at bar amounted to conduct both unprofessional and dishonorable. But this is not the test of the validity of the particular clause of the statute. The underlying question involved in all cases that may arise is whether the courts can uphold and enforce a statute whose broad and indefinite language may apply not only to a particular act about which there would be little or no difference of opinion, but equally to others about which there might be radical differences, thereby devolving upon the tribunals charged with the enforcement of the law the exercise of an arbitrary power of discriminating between the several classes of acts."

From *United States* v. *Capital Traction Co., supra,* we may quote the syllabus to the following effect:

"An act of Congress making it a criminal offense for any street railway company in the District of Columbia to run an insufficient number of cars to accommodate persons desiring passage thereon without crowding the same is too indefinite and uncertain in its definition of the offense sought to be created to support an information or indictment. (Construing sec. 16 of the act of Congress of May 23, 1908, 35 Stat. at L. 246, chap. 190, and following *Czarra* v. *Medical Supers.,* 25 App. D. C. 443.)"

And on page 598 we find:

"In a criminal statute, the elements constituting the offense must be so clearly stated and defined as to reasonably admit of but one construction. Otherwise, there would be lack of uniformity in its enforcement. The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another. As was said in *United States* v. *Reese*, 92 U. S. 214, 23 L. Ed. 563: 'If the legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime . . . It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.' "

*United States* v. *L. Cohen Grocery Company*, 255 U.S. 81, was a case where the first two syllabi were as follows:

"Section 4 of the Food Control Act of August 10, 1917, as amended October 22, 1919, in denouncing and attaching a penalty of fine or imprisonment to the making by any person of 'any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries,' must be construed as forbidding and penalizing the exaction of an excessive price upon the sale of a commodity.

"To that extent the section, since it sets up no ascertainable standard of guilt, is repugnant to the Fifth and Sixth Amendments to the Constitution, which require due process of law and that persons accused of crime shall be adequately informed of the nature and cause of the accusation."

There the defendant demurred practically because the statute was so indefinite as not to enable it to be known what was forbidden, and therefore amounted to a delegation by Congress of legislative power to courts and juries to determine what acts should be held to be criminal and punishable. The Supreme Court of the United States quotes from the opinion of the court below as follows (on page 87):

"Therefore, because the law is vague, indefinite, and uncertain, and because it fixes no immutable standard of guilt, but leaves such standard to the variant views of the different courts and juries which may be called on to enforce it, and because it does not inform defendant of the nature and cause of the accusation against it, I think it is constitutionally invalid, and that the demurrer offered by the defendant ought to be sustained."

Among other cases the Supreme Court quotes *United States* v. *Capital Traction Co.*, 34 App. D. C. 592, *supra*. Then the court went on to refer to other cases in which it was insisted sustained the contrary view, intimating, as I read it, on page 92 that no standard whatever had been required in the case before it, and the court arrived at the conclusion that the statute was unconstitutional.

*Connally* v. *General Construction Company*, 269 U.S. 385, was a case where the Oklahoma Compiled Statutes imposed severe, cumulative punishments upon contractors with the State who pay their workmen less than the "current rate of per diem wages in the locality where the work is performed." This statute was held void for uncertainty. The Supreme Court cites from the opinion in *United States* v. *Capital Traction Co., supra,* as follows:

"The statute makes it a criminal offense for the street railway companies in the District of Columbia to run an insufficient number of cars to accommodate persons desiring passage thereon, without crowding the same. What shall be the guide to the court or jury in ascertaining what constitutes a crowded car? What may be regarded as a crowded car by one jury may not be so considered by another. What shall constitute a sufficient number of cars in the opinion of one judge

may be regarded as insufficient by another . . . There is a total absence of any definition of what shall constitute a crowded car. This important element cannot be left to conjecture, or be supplied by either the court or the jury. It is of the very essence of the law itself, and without it the statute is too indefinite and uncertain to support an information or indictment."

In *State of West Virginia* v. *Lantz,* 26 A.L.R. 894, again to quote the syllabus it was held:

· "An act of the legislature (Laws 1921, chap. 112), making it a crime to operate an automobile around a curve on a public road without having the same under control, or without reducing the speed thereof to a reasonable and proper rate, is violative of §§ 10 and 14 of article 3 of the Constitution of this state, and is void for uncertainty and indefiniteness."

It seems that the particular statute in that opinion was too indefinite and among other cases the court cites *United States* v. *Capital Traction Co., supra.* In a note to the case on page 905 the commentator said as follows:

"In Texas, where the Penal Code provides that the design of the Code is to define in plain language every offense against the laws of this state, and also provides that in order that the system of penal law may be complete within itself, and that no system of foreign laws, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission, unless the same is made a penal offense and a penalty is affixed thereto by the written law of the state, a statute has been held invalid on the ground that it was indefinite and uncertain, which provided that the driver of any motor vehicle shall drive or operate such vehicle in a careful manner with regard for the safety and convenience of pedestrians and all other vehicles of traffic upon the highway."

*State* v. *Diamond,* 20 A.L.R. 1527, involved the right of free speech and the court quotes from *Czarra* v. *Medical Supervisors, supra,* and from *United States* v. *Reese, supra,* and also cites from *United States* v. *Capital Traction Co.*

See *Cinadr* v. *State,* 300 S.W. 64, citing other cases in Texas where the principle was involved. The particular

words of the statute was that one needlessly killing an animal is guilty of an offense.

*Stevenson* v. *Houston T. C. R. Co.,* 19 S.W. (2d) 207, was a case where the Penal Code of Texas was held inoperative for indefiniteness in making it an offense to operate on a highway a motor vehicle not provided with adequate breaks kept in good working order.

The Act in the case before us provides:

"Section 12.—(*a*) Persons operating motor vehicles on the public highway shall at all times exercise due care and take every reasonable precaution to insure the safety of persons and property."

It seems to me that under the authorities cited the statute is void for indefiniteness. Anyone who committed an act of negligence, as in the case before us, and ordinarily would only be subjected to a civil suit for damages might be prosecuted as for a crime. I can not believe that it was the intention of the Legislature under the cited section to make people answerable in the criminal courts for negligence. While it may be true that the said paragraph is independent of the other paragraphs and attempts to charge a separate crime, yet under these decisions I think it can not be sustained.

The case of *People* v. *Borque,* 25 P.R.R. 553, rather tends to show that a specific violation of one of the other paragraphs is necessary.

It does not seem to me that there are two lines of decisions in the Supreme Court of the United States. The true rule is stated, as I apprehend, in the *Cohen* case, *supra.* What the Supreme Court of the United States then has done is to say in effect, that certain well-known infractions need no further definition. With the other cases cited in the majority opinion I have no quarrel. They decide that statutes making certain results of speeding a crime and so forth need no greater definition. The said cases do not vary the principle that it is the Legislature and not the courts that should say what is and what is not criminal.