EL PUEBLO DE PUERTO RICO, demandante y apelado *v.* HORACIO FIGUEROA, acusado y apelante.

No. 5467.—*Sometido:* Enero 30, 1935.   *Resuelto:* Junio 28, 1935.

---

* NOTA:  Véase el prefacio.

*Felipe Colón Díaz,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

■ Figueroa fué convicto de infringir el inciso (*a*) del artículo 12 de la Ley para Reglamentar el uso de Vehículos de Motor (Leyes de 1916, páginas 144, 152). Ese inciso lee como sigue:

"(*a*) Las personas que manejen vehículos de motor en los caminos públicos, deberán, en todo tiempo, ejercer el debido cuidado y tomar precauciones razonables para garantizar la seguridad de vidas y propiedades."

La denuncia radicada en la corte municipal imputaba que:

". . . el referido Horacio Figueroa manejaba el vehículo pesado de motor No. H–469, sin ejercitar el debido cuidado y tomar las precauciones razonables para garantizar la seguridad y vidas de las personas, llevando amarrada con un cáñamo, de la cual colgaba, una de las tapas posteriores de dicho truck, haciendo que ésta columpiara de un lado para el otro, de tal manera que, al llegar a dicho sitio, hectómetro 9 de la mencionada carretera, al pasar dicho truck por el lado del denunciante, la dicha tapa le dió al denunciante de tal manera que lo echó al suelo ocasionándole golpes graves que lo dejaron sin conocimiento, fracturándole el cráneo, por lo que tuvo que ser recluído en el Hospital de Damas de Ponce."

Al ser llamado el caso para juicio *de novo* la corte de distrito declaró sin lugar una excepción perentoria basada en que la denuncia no imputaba delito alguno, y esto se señala como error. El apelante se funda en el caso del *Pueblo* v. *Borque,* 25 D.P.R. 594, y *Pueblo* v. *Rivera,* 26 D.P.R. 439. La denuncia en el caso de Borque decía que:

". . . . . el referido acusado que guiaba como conductor el auto No. 519 de su propiedad, maliciosa y voluntariamente no tomó las debidas precauciones en el manejo de dicho auto para garantizar vi-

das y propiedades, dando lugar a que el referido auto chocase con el niño Joaquín Solá, el cual recibió contusiones de las que fué asistido en la Sala de Socorro de Santurce.''

El fiscal insistió en que la denuncia estaba en orden toda vez que seguía la fraseología del estatuto. Lo que se dijo en el caso de Borque debe interpretarse a la luz de los hechos y de la cuestión suscitada ante este tribunal. La denuncia no imputaba un delito ni bajo el inciso (a) ni bajo ningún otro inciso del artículo 12 de la Ley. La contención del fiscal no podía ser sostenida aún si la denuncia hubiese seguido literalmente el contexto del inciso (a). Ese inciso prescribe en términos amplios y generales una regla de conducta para aquellas personas que guían vehículos de motor en la vía pública. En tales casos no basta que la denuncia siga la fraseología del estatuto. Debe ser más específica a fin de advertir al acusado de manera más definida de la naturaleza de la acusación que se le imputa. Este es el principio general en que se basa el caso de Borque, el cual fué seguido por este tribunal en los casos de *Pueblo* v. *Rivera,* supra; *Pueblo* v. *Salgado,* 27 D.P.R. 881; *Pueblo* v. *Matienzo,* idem 918, y distinguido en el de *Pueblo* v. *García,* 28 D.P.R. 954.

Esta corte nunca ha dicho en un caso como el presente que sería imposible imputar un delito bajo el inciso (a) a menos que tal delito también estuviese incluído en algún otro inciso del artículo 12. Todo lo contenido en opiniones anteriores que pudiera así interpretarse por inferencia o deducción debe ser considerado como *obiter dicta,* ya que hasta el presente no nos habíamos visto precisados a considerar un caso como el que tenemos ante nos. Por primera vez nos confrontamos con una denuncia que claramente imputa un delito comprendido por las disposiciones del inciso (a) y no por cualesquiera otros incisos del artículo 12 de la ley. El inciso (a) no es un mero preámbulo o párrafo de introducción. Es completo de por sí y enteramente in-

dependiente de los otros incisos del artículo 12. Cada uno de los otros incisos es de por sí igualmente completo y enteramente independiente del inciso (a). Una infracción de cualquiera de los otros incisos podría ser imputada como un delito separado sin referirse en absoluto al inciso (a). Una violación de uno o más de esos incisos podría también ser imputada a manera de especificación como una infracción al inciso (a). Empero, esto no es así en lo que respecta a todos los demás incisos. La infracción del inciso (h), por ejemplo, no podría ser imputada siguiendo la terminología de dicho inciso, sin más, como una infracción del inciso (a). Una violación del inciso (b) no podría en forma alguna equivaler a una infracción del inciso (a). Por otra parte, el inciso (a) comprende un número crecido de delitos que no podrían ser imputados como una infracción de cualquiera de los otros incisos. Un conductor que por ejemplo hace retroceder su vehículo repentinamente y sin dar aviso, de una calle transversal hacia una calle de bastante tránsito, con menosprecio de la seguridad de vidas y propiedades, sería culpable de una flagrante violación del inciso (a) pero no se le podría imputar con éxito una infracción de cualquiera de los otros incisos. El presente caso es otro ejemplo saliente. No es necesario que multipliquemos los ejemplos de esta índole. Si no pudieran imputarse otras infracciones del inciso (a) que las de los demás incisos, entonces la Legislatura hizo algo fútil y vano al redactar ese inciso y no podemos concebir que ésta fuera la intención legislativa. Por tanto, resolvemos que la corte de distrito no cometió error al declarar sin lugar la excepción perentoria.

El segundo señalamiento es que la sentencia es contraria a los hechos y a la prueba. La médula del argumento es que el denunciante fué culpable de negligencia contribuyente al caminar en la misma dirección que el autocamión por la izquierda de la carretera en vez de por la derecha. Tal negligencia contribuyente, de existir, no constituye una

defensa y la contención, según ha sido desarrollada en el alegato del apelante, carece de mérito.

■ Lo que antecede resuelve las cuestiones suscitadas por el apelante. Sin embargo, en el curso de nuestra propia discusión del caso se ha impugnado la validez del estatuto mismo. En apoyo del criterio de que es nulo por lo incierto, se nos ha llamado la atención hacia las siguientes autoridades: *Czarra* v. *Board of Medical Supervisors*, 25 App. D. C. 443; *United States* v. *Capital Traction Co.*, 34 App. D. C. 592; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *Connally* v. *General Construction Company*, 269 U. S. 385; *State of West Virginia* v. *Lantz*, 26 A. L. R. 894; *State* v. *Diamond*, 20 A. L. R. 1527; *Cinard* v. *State*, 300 S. W. 64; y *Stevenson* v. *Houston & T. C. R. Co.*, 19 S. W. (2d) 207.

En la nota puesta al caso de *State of West Virginia* v. *Lantz*, (1922) en la página 898, el anotador dice:

"Aunque los casos de Georgia y Pennsylvania, conforme se verá más adelante, están en conflicto, se ha resuelto generalmente que estatutos u ordenanzas que disponen que ninguna persona conducirá o guiará un vehículo de motor imprudentemente o a una velocidad mayor que la que sea razonable y adecuada, tomando en consideración el ancho, tránsito y uso del camino, y las reglas generales y acostumbradas del mismo, o en tal forma que ponga en peligro la propiedad, vida, o bienestar de una persona, no son nulos por ser demasiado vagos, inciertos e indefinidos para sostener una acusación criminal."

Luego de citar casos de Nebraska, Ohio y Wisconsin, el anotador cita dos interesantes extractos de *Mulkern* v. *State*, (1922-Wis.) 187 N. W. 190 y *State* v. *Schaeffer* (Ohio) 117 N. E. 220. Véase también *Gallaher* v. *State* (1923) 29 A. L. R. 1059, y nota; *Commonwealth* v. *Pentz*, 247 Mass. 500, 143 N. E. 322; y *People* v. *Maki*, 223 N. W. 70.

En la Corte Suprema de los Estados Unidos hay dos corrientes de decisiones, fácilmente distinguibles la una de la otra y distinguidas repetidamente por la Corte Suprema

misma. Una de estas corrientes incluye casos como el de *United States* v. *Cohen Grocery Co.,* y *Connally* v. *General Construction Co.,* supra. La otra incluye casos como los de *Nash* v. *United States,* 229 U. S. 373; *Miller* v. *Strahl,* 239 U. S. 426, y *Omaechevarria* v. *Idaho,* 246 U. S. 343.

En el caso de Nash la corte tenía ante su consideración las disposiciones penales de la Ley Sherman Contra los Monopolios, y por voz del Juez Asociado Sr. Holmes, dijo:

"La objeción que se aduce a las disposiciones penales del estatuto se cree están justificadas por los casos de The Standard Oil Co. v. United States, 221 U. S. 1, y United States v. American Tobacco Co., 221 U. S. 106. Pueden tomarse esos casos en el sentido de que han establecido que únicamente caen dentro de la ley aquellos contratos y combinaciones que con motivo del espíritu o la naturaleza inherente de los actos que se proponen realizar, perjudican los intereses públicos al restringir indebidamente la competencia o al obstruir en forma impropia el curso de los negocios. 221 U. S. 179. Y entonces se dice que el delito así definido por el estatuto contiene en su definición un elemento de gradación (*degree*) respecto al cual los cálculos pueden diferir como consecuencia de lo que un hombre puede ir a prisión porque su sano criterio no anticipó el de un jurado compuesto de hombres menos competentes. La proposición germana de que 'la criminalidad de un acto no puede depender de que un jurado pueda creerlo razonable o irrazonable y la de que debe haber alguna precisión y certeza,' es citada del finado Juez, Sr. Brower, mientras desempeñaba el cargo en la Corte de Circuito. Tozer v. United States, 52 Fed. Rep. 917, 919.

"Pero aparte del derecho común en lo que a la restricción del comercio por el estatuto se refiere, la ley está plagada de casos en que la suerte de un hombre depende de que calcule acertadamente, es decir, de la manera en que más tarde un jurado lo haga, de una cuestión de gradación. Si su criterio está equivocado no solamente puede incurrir en una multa o en un corto período de prisión, como sucede en el presente caso, sino que también puede incurrir hasta en la pena de muerte. 'Un acto que produzca la muerte de un semejante puede ser asesinato, homicidio, o un accidente desgraciado de acuerdo con el grado de daño que le rodee' según la experiencia ordinaria bajo las circunstancias conocidas por el actor. 'El significado mismo de la ficción de malicia implícita en tales casos en el derecho común fué que un hombre tal vez tendría que responder con

su propia vida de las consecuencias que no intentó ni previó.' Commonwealth v. Pierce, 138 Massachusetts, 165, 178. Commonwealth v. Chance, 174 Massachusetts, 245, 252. 'El procedimiento seguido en tales casos es examinar si un deber social común, bajo las circunstancias concurrentes, hubiera aconsejado una conducta más circunspecta.'· 1 East P. C. 262. Si una persona produce la muerte a un semejante al conducir un automóvil violentamente contra una muchedumbre, ella podría ser convicta de asesinato no importa cuán remotamente pudiera anticipar el resultado. Véase Reg. v. Desmond, y otros ejemplos en Stephen, Dig. Crim. Law, artículo 223, primera edición, pág. 146. Si tan sólo guió un vehículo negligentemente por una calle tal vez sólo se le condene por homicidio involuntario o por un delito menor. Reg. v. Swindall, 2 C. & K. 230; Rex v. Burton, 1 Strange, 481. Y en el último caso podría hacérsele responsable no embargante ser su creencia que actuaba tal cual lo hubiera hecho·un hombre prudente. Véase The Germanic, 196 U. S. 589, 596. Pero sin aducir ulterior argumentación el recurso casi queda resuelto por el caso de Waters-Pierce Oil Co. v. Texas (No. 1), 212 U. S. 86, 109, en que la decisión del Juez Brewer y otras similares fueron citadas en vano. Somos de opinión que no hay dificultad constitucional alguna que se oponga a que se haga cumplir la parte penal del estatuto.''

En el caso de *Miller* v. *Strahl* la corte discutía la constitucionalidad de una ley estadual que imponía a todos los dueños de hoteles de determinada clase el deber ''en caso de que ocurriera un incendio dentro del mismo de notificar a todos los huéspedes inmediatamente y hacer cuanto estuviese a su alcance para salvar a tales huéspedes o inquilinos.'' De la opinión emitida por el Juez Asociado Sr. McKenna, tomamos el siguiente extracto:

''El demandante en el recurso de error sostiene además que el estatuto 'carece del debido proceso de ley' toda vez que 'deja de prescribir una regla fija de conducta.' Se alega que el requisito de que 'uno deberá hacer cuanto esté a su alcance' deja de informar a una persona de inteligencia ordinaria lo que debe o no debe hacer bajo determinadas circunstancias.

''Las reglas de conducta deben ser necesariamente expresadas en términos generales y depender para su aplicación de las circunstancias, y éstas varían. Podría ser cierto, según dice el letrado, que

'los hombres tienen temperamentos distintos' siendo algunos 'verdaderos cobardes y muy pocos verdaderos héroes;' que el cerebro de algunas personas funciona 'rápida y normalmente ante el peligro mientras que otras pierden todo dominio de sus acciones.' Es evidente que no pueden prescribirse reglas para afrontar estos temperamentos tan distintos. Sin embargo, todos deben ser sometidos a juicio. ¿Y qué mejor prueba podría fijarse que la de hacer 'cuanto esté al alcance de uno' de acuerdo con las circunstancias?

"El caso cae, por tanto, bajo la regla de Nash v. United States, 229 U. S. 373, y no bajo la de International Harvester Co. v. Missouri, 234 U. S. 199."

En el caso de *Omaechevarria* v. *Idaho,* la corte tenía bajo su consideración una ley del estado que prohibía a "cualquier persona encargada de un rebaño de ovejas que le permita pastar en cualquier finca anteriormente ocupada por ganado vacuno" y luego proveía que: "la prioridad del derecho posesorio entre los dueños de ganado vacuno y lanar, a cualquier finca, deberá ser determinada por la prioridad en el uso acostumbrado y ordinario de la misma como finca de ganado vacuno o lanar." La opinión de la corte, emitida por el Juez Asociado Sr. Brandeis, lee en parte como sigue:

"*Segundo:* También se sostiene que el estatuto de Idaho, por ser de carácter penal, es tan vago en sus términos, que viola la garantía constitucional de la Enmienda XIV relativa al debido proceso de ley, toda vez que deja de determinar los límites de una 'finca' o el período de tiempo que es necesario para que una ocupación anterior sea una ocupación 'usual' dentro del significado de la ley. Las personas familiarizadas con las condiciones de las fincas que estén deseosas de observar la ley tendrán poca dificultad en determinar lo que ésta prohibe. Expresiones similares son corrientes en los estatutos penales de otros Estados. Este estatuto no presenta mayor incertidumbre o dificultad en su aplicación a hechos que necesariamente varían, de la que repetidamente ha sido sancionada por este Tribunal. Nash v. United States, 229 U. S. 373, 377; Miller v. Strahl, 239 U. S. 426, 434."

En *Cline* v. *Frink Dairy Company,* 274 U. S. 445, el Juez Presidente, Sr. Taft, escribió la opinión de la corte. Se re-

solvió que una ley contra monopolios del estado de Colorado era inconstitucional. El caso siguió el de *United States* v. *Cohen Grocery Company*, supra, así como otros de la misma índole que fueron revisados extensamente. Empero, la doctrina del caso de Nash fué reafirmada y distinguida en la página 464 en la siguiente forma:

" . . . . Es cierto que cuando se trata de una cuestión como la de negligencia, es decir, de una regla de conducta para impedir que un hombre de inteligencia ordinaria cause daño a sus vecinos, se entenderá que todos cumplirán tanto sus disposiciones civiles como las penales. Es una regla de conducta que todo el mundo se supone conocer y que debe hacerse cumplir a fin de que la sociedad pueda existir sin riesgo alguno. En el caso de Nash dijimos (página 377), 'Pero aparte del derecho común en lo que a la restricción del comercio por el estatuto se refiere, la ley está plagada de casos en que la suerte de un hombre depende de que calcule acertadamente, es decir, de la manera en que más tarde un jurado lo haga, de una cuestión de gradación. Si su criterio está equivocado no solamente puede incurrir en una multa o en un corto período de prisión, como sucede en el presente caso, sino que también puede incurrir hasta en la pena de muerte. "Un acto que produzca la muerte de un semejante puede ser asesinato, homicidio, o un accidente desgraciado de acuerdo con el grado de daño que le rodee" según la experiencia ordinaria bajo las circunstancias conocidas por el actor . . . . "El procedimiento seguido en tales casos es examinar si un deber social común, bajo las circunstancias concurrentes, hubiera aconsejado una conducta más circunspecta." 1 East P. C. 262. Siguiendo la autoridad del caso de Nash, sostuvimos en el de Miller v. Oregon, por un *per curiam*, 273 U. S. 657, una condena por el delito de homicidio bajo un estatuto de Oregon, que hacía que la siguiente regla de conducta sirviera pará determinar si se cometía o no un delito público:

" 'Toda persona que maneje un vehículo de motor en las vías públicas de este estado conducirá el mismo en forma cuidadosa y prudente, a una velocidad que no exceda de 30 millas por hora, y dentro de los límites de ciudades y pueblos no incorporados, a no más de 20 millas por hora, y por cruces y frente a escuelas a no más de 12 millas por hora, y en ningún caso a una velocidad que ponga en peligro la propiedad o la vida o bienestar ajenos. (Cap. 371, Leyes Generales de Oregon, 1921, Sección 2, inciso 16).'

"La acusación fué formulada bajo la última cláusula de este estatuto. No es injusto ni arbitrario exigir responsabilidad criminal a aquellas personas que conducen un instrumento de locomoción tan posiblemente peligroso, como lo es un automóvil, por una vía pública, toda vez que ellas saben y deben saber el grado de prudencia que es necesario ejercer para no producir daño a los demás bajo las condiciones prevalecientes en una vía pública. Véase Hess v. Pawloski, ante, pág. 352.

"Pero no procedería someter a un hombre de inteligencia ordinaria al riesgo de una acusación por no haber ejercido sabiamente su preparación económica o mercantil cuando hay envueltos tantos factores de índole distinta, que ni la persona que ha de resolver anticipadamente ni el jurado que ha de juzgarle después de ocurrido el hecho puede a conciencia y con toda certeza determinar el resultado. Cuando a una decisión sobre si cierta utilidad en un negocio complicado es razonable se agrega la determinación de si una restricción minuciosa de legislación contra monopolios impedirá un beneficio razonable en lo que a determinado artículo concierne, tenemos una disposición por demás impracticable para la resolución del jurado. La legislatura debe fijar el 'standard' más simple y más definidamente antes de que una persona pueda cumplirlo o de que un jurado pueda actuar."

Parece que huelgan los comentarios. Nuestra conclusión es que el inciso (*a*) no es nulo por incierto.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Wolf disintió.*